EASTERN DIST.
May, 1838.

CURELL
vs.
JOHNSON.

When the evidence leaves it doubtful whether the parties understood each other, as to the transfer of a certain account, charging the defendants' *firm* with it, the jury is the proper tribunal to decide upon the whole matter.

The plaintiffs' debtor is a competent witness, in a suit between them and the defendant, who is sued on his promissory note, when it appears the witness's private account was contracted before the execution of the note sued on, even when the defendant is charged with it by a transfer of the plaintiffs, made by them afterwards.

---

## CURELL vs. JOHNSON.

APPEAL FROM THE PARISH COURT, FOR THE PARISH AND CITY OF NEW-ORLEANS.

A bill of lading, although it acknowledges the goods were shipped in good condition, does not authorize the acknowledgment to extend beyond the external appearance of the packages, containing the merchandize.

When the plaintiff fails to make out his case satisfactorily, he will be non-suited.

EASTERN DIST.
*May*, 1838.

CURELL
*vs.*
JOHNSON.

This is an action against the defendant, as captain of the ship Mobile, for damage and injury occasioned to certain goods and packages of merchandize, shipped at Liverpool to the plaintiffs in New-Orleans.

The plaintiffs allege, that six boxes of merchandize were shipped in good order, at Liverpool, on board of the ship called the Mobile, commanded by the defendant, and that by his neglect and bad management, the goods were so damaged, that they, the plaintiffs, have sustained a clear loss of four hundred and two dollars, for which they pray judgment.

The defendant pleaded a general denial ; and denied specially that the goods in question were damaged by his fault or negligence.

Upon these pleadings and issues the cause was tried.

The plaintiffs annexed the bill of lading, showing that on its face the goods were shipped in good order. Evidence was produced to show they were received in a damaged state. The defendant produced explanatory and exculpatory evidence, exonerating him from blame or negligence, or that the damage to the goods was occasioned by his misconduct or fault.

The parish judge summed up the evidence of the case, and gave judgment as follows :

" 1st. That the duty of the master of a ship, is to deliver the goods by him received on freight, in good order and condition, when, at the time of their being shipped, they were in such good order and condition ; and that the only way in which a master of a ship may exonerate himself from responsibility, when the goods he delivers are not in good order and condition, is to show that they were damaged by the act of God, and not by accidents which may result from the fault or negligence of man. See *Abbott on Shipping, article 3, chapter* 4.

" 2d. That the six boxes of linen which have given rise to the present suit, were shipped at Liverpool in good order and condition, as appears from the bill of lading signed by the defendant.

" 3d. That it is in evidence, that the day after, (if not the same day, which the testimony leaves doubtful,) the said six boxes of linen had been sent to the plaintiffs' store, the wardens of the port being called by the plaintiffs to examine them, found *the linens spotted, and the paper around them damp. See certificate of survey, c.*

" 4th. That two experienced dealers of this place, being called shortly after the port wardens, by the plaintiffs, having their certificate on file, as well as by their deposition in open court on the trial of the case, fixed the value of the said six cases of linen, had they arrived in sound condition, at two thousand two hundred and five dollars.

" 5th. That from the testimony produced, it is clear, that the said six boxes of linen, from the time they were sent to the plaintiffs' store, by the agent of the ship, until the time they were examined by the port wardens, and by the dealers aforesaid, were not in a situation by which the contents would be damaged, and that, therefore, the damage must have preceded the delivery.

" 6th. That although there be a discrepancy between the two statements given, of the external appearance of the boxes, by the port wardens, and by the dealers aforementioned, the former declaring in their certificate that ' the boxes had no external appearance of damage, which would make it the duty of the captain to call a survey on them, on board the ship ;' and the latter declaring in their certificate, confirmed on the trial by their deposition, that " the external appearance of the cases showed evident marks of damage, while the inside of the pieces was perfectly sound," *still the* deposition of J. M. Castarede, one of the port wardens, and that of Henry Castarede, the clerk of the consignee of the ship, witnesses for the defendant, show, that the boxes which were of white wood, had been blackened by the coal which happened to be on board the ship, and in that manner it may well be conceived, that mistakes may have been committed with regard to the external appearance of the boxes.

" 7th. That it being evident that the damage preceded the delivery, the next inquiry is, whether the damage was the

effect of the quality of the linens, or their situation at the time they were shipped.

"8th. That on this question, the testimony of S. W. Oakey and Peter Conrey, the dealers before mentioned, leaves no doubt in the mind of the court, that the linens in question, when shipped, were dry and in good condition, and that the damage must have accrued subsequent to their being on board the defendant's vessel.

"9th. That this being taken as the fact from the principles above expressed, as to the responsibility of the master of a ship, liability attaches to the defendants in this case.

"10th. That it also appears in evidence, that by order of the port wardens, the six boxes of linen in question being sold by Mossy & Garridel, auctioneers of this place, for account of whom it might concern, produced a net sum of one thousand eight hundred and two dollars, and sixty-three cents.

"11th. That deducting from the sum of two thousand two hundred and five dollars, being the amount proved to have been the value of the six boxes of linen in question, had they been delivered in good order and condition to the plaintiffs, the sum of one thousand eight hundred and two dollars and sixty-three cents, being the amount of the sale at auction, as before stated, there results a balance or loss of four hundred and two dollars and thirty-seven cents, which is the amount claimed by the plaintiffs, and to which, in my opinion, they are entitled.

"It is, therefore, ordered, adjudged and decreed, that the plaintiffs recover from the defendant the sum of four hundred and two dollars and thirty-seven cents, and the costs of suit."

The defendant appealed.

*T. Slidell,* for the plaintiffs.

*Bodin, contra.*

EASTERN DIST.
*May*, 1838.

CURELL
*vs.*
JOHNSON.

A bill of lading, although it acknowledges the goods were shipped in good condition, does not authorize the acknowledgment to extend beyond the external appearance of the packages containing the merchandize.

When the plaintiff fails to make out the case satisfactorily, he will be non-suited.

*Carleton, J.*, delivered the opinion of the court.

We have carefully examined the testimony coming up with the record on this case, and are not altogether satisfied, that the damage complained of, happened to the goods on their transit to New-Orleans, through the fault and neglect of the defendant.

The judge appears to base his judgment mainly upon the testimony of two witnesses, whose mere opinions are opposed by the facts fully attested and not controverted ; that the goods in question were stored between the fore and main hatches, upon crates of empty porter bottles, and surrounded with other merchandize, which arrived in good order.

It appears to us, the defendant has gone far to prove affirmatively, that the fault was not his own ; and although he acknowledged by the bill of lading, that he received the merchandize in good condition, yet we do not understand his acknowledgment to extend beyond the external appearances of the boxes in which they were packed.

Had a jury, acquainted with such matters, passed upon the controversy between the parties, it might not have been our duty to disturb their verdict.    But as the subject presents itself to our mind, it does appear to us, that the plaintiff has not satisfactorily made out his case, and that the judgment of the court is erroneous.

It is, therefore, ordered, adjudged and decreed, that the judgment of the Parish Court be avoided and reversed, and that there be judgment for the defendant, as in case of non-suit, with costs in both courts.